SEALED

Unsealed on 11/26/12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

FILED
12 NOV 19 AM 9:55

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPHINE LORINE FULTS KELLY, <br> DAVID JOSE RICO, <br><br> Defendants. | Magistrate Case No. <br><br> '12MJ4234 <br><br> **COMPLAINT FOR VIOLATION** <br><br> Title 18, U.S.C. §1591(a) and (b)- <br> Sex Trafficking of a Minor |

The undersigned Complainant, being duly sworn, states:

On or about and between March 17, 2012 and April 10, 2012, within the Southern District of California, defendants JOSEPHINE LORINE FULTS KELLY and DAVID JOSE RICO, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, to wit: Minor Female (MF – age 17), knowing and in reckless disregard of the fact that MF would be caused to engage in a commercial sex act, having had a reasonable opportunity to observe MF and knowing and in reckless disregard of the fact that MF had not attained the age of 18 years; in violation of Title 18, United States Code, Sections 1591(a) and (b).

And the complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Carla Croft
Special Agent, FBI

Sworn to me and subscribed in my presence this 19th day of November, 2012.

UNITED STATES MAGISTRATE JUDGE

1

## STATEMENT OF FACTS

On March 31, 2012, Harbor Police Department (HPD) Officer Schmidt made a traffic stop on a Dodge Neon bearing California license plate 5NMJ490 for suspended vehicle registration. During the stop Schmidt identified the occupants of the vehicle as being JOSEPHINE LORINE FULTS (Defendant 1), DAVID JOSE RICO (Defendant 2), a minor female who identified herself as "Alice Fults" sister of Defendant 1, and Defendant 1's infant daughter. Officer Schmidt determined that Defendant 1 was on probation and had a valid 4th waiver search condition. He asked for, and received, consent from the occupants of the vehicle to conduct a search. During the search he discovered approximately $850 in cash in the wallet of Defendant 2 and about $950 in cash in the purse of Defendant 1. Defendant 2 stated that he worked at the Stingaree Night Club while Defendant 2 claimed the money came from her tax return. Also located in the vehicle was a ledger with several motel addresses with room numbers, multiple contacts with telephone numbers and electronic mail (e-mail) addresses, and website information. Officer Schmidt noted that "Alice" appeared very nervous and was dressed in a revealing blouse, a very short skirt, 4-inch heels, and that she had heavy face make-up. Officer Schmidt suspected that these individuals were involved in some form of illicit activity. Information from that stop was forwarded to HPD Detective Michael Dye on April 4, 2012 for investigative follow up.

As a routine part of the follow up a records check of the driver of the vehicle, Defendant 1, were conducted. It was verified that she was on probation and had an open case with San Diego County's Child Welfare Service. The case worker was contacted and subsequently provided information that there was a related missing juvenile. The case worker identified the missing minor female (MF), the reporting party, and advised that the report was received by the La Mesa Police Department on March 17, 2012. Detective Dye contacted MF's father regarding MF and ultimately met with him and obtained a photograph of MF. During the meeting, MF's father told Detective Dye that he was sure that MF was with Defendant 1 and may be using drugs. MF's father further stated that Defendant 1 was the mother of his granddaughter and was concerned for his granddaughter's welfare as well. MF's father was unsure where they would be staying, however, he knew that they frequently posted their

2

locations on various social media web sites. MF's father was advised to contact Detective Dye if he received any information as to their whereabouts. Following the meeting, Officer Schmidt was shown the photograph and he verified that it was the same female he had encountered during the traffic stop on March 31, 2012 who had identified herself as "Alice."

On April 6, 2012, Detective Dye was contacted by the case worker who stated that she had possibly found an advertisement on Backpage.com where MF appeared to be soliciting herself as an adult escort. Backpage.com is a website frequently used to post ads soliciting prostitution. Officer Schmidt was advised and looked at the photos on the advertisement. Officer Schmidt verified that the picture in the advertisement was MF. The phone number used as a call back number for the advertisement was (619) 581-0909. This number was known to be utilized by Defendant 1. The voice on the voicemail message was later found to be consistent with Defendant 1's voice.

On April 8, 2012, Detective Dye received a voice mail message from MF's father. He stated in his message that he was certain that Defendant 1 and a male identified as David RICO (Defendant 2) were staying at the Travel Lodge in Mission Valley. MF's father had seen a photo posted on the social web site Facebook and this prompted him to drive by the hotel. MF's father stated that when he drove by he witnessed Defendant 1, Defendant 2, and Defendant 1's children at the pool.

On April 10, 2012, Detective Dye contacted the Assistant General Manager of the hotel who verified that room 225 was registered to Defendant 2. He further advised that Defendant 2 had not yet checked out of the room and may still be there. Surveillance was conducted by HPD. During the surveillance it was observed that a house keeper knocked on the door of room 225. A female matching the physical description of Defendant 1 opened the door. As Defendant 1 was on probation and had a 4th waiver search condition, Detective Dye and additional HPD and San Diego Police Department (SDPD) units contacted Defendant 1 to conduct a 4th waiver search. Prior to opening the room door, an SDPD officer observed someone throwing objects out of the bathroom window. Defendant 1 then opened the door. Defendant 1 was told that officers were going to conduct a 4th waiver search and that her case worker was going to perform a child welfare check. Defendant 1 stated that she needed to get her "sister" out of the bathroom. MF emerged out of the bathroom. MF did not initially provide her true identity but after being shown the photograph previously obtained from her

3

father, MF did acknowledge her true identity. Detective Dye told MF that he knew she had been prostituting and asked if Defendants 1 and 2 had been holding her against her will. MF asked why Detective Dye thought she had been prostituting. Detective Dye showed MF the Backpage.com advertisement. MF stated that Defendant 1 had nothing to do with her prostitution. Detective Dye asked why Defendant 1's telephone number appeared on the advertisement. MF stated she had taken Defendant 1's phone but no longer had it. MF repeated that Defendants 1 and 2 had no knowledge of her activities and involvement in prostitution. MF was later released to a family member.

On April 12, 2012, Detective Dye contacted FBI Special Agent (SA) Carla Croft regarding the investigation. Subpoenas were sent to Backpage.com, various telephone companies, various internet providers, and a credit card provider among other companies. Results of the Backpage.com subpoena showed that there were at least 14 advertisements for prostitution containing MF picture and telephone number (619) 581-0909 from March 16, 2012 to April 7, 2012. All of the advertisements were associated with user e-mail address cpma900@yahoo.com and all but one of the advertisements was paid for using credit card 5111652109225998. A subpoena served on H&R Block showed that the credit card account was for Defendant 2. A subpoena served on Cricket Communications showed that the telephone number was subscribed to by Defendant 1. A search warrant on the user e-mail address showed that the account was utilized by Defendant 1. Multiple subpoenas were served to several internet providers. The results of these subpoenas identified eight hotels whose internet service was used to post the advertisements on Backpage.com. Detective Dye went to the various hotels and located hotel registry information showing rooms rented at the hotels by Defendant 2 coinciding with the dates the prostitution advertisements were posted using the hotels' internet services.

On July 11, 2012, Detective Dye and SA Croft interviewed MF. MF stated that Defendant 1 and Defendant 2 both knew she was prostituting. MF further stated the Defendant 1 told her she needed to work as a prostitute so Defendant 1 and Defendant 2 would be able to use the money to secure an apartment for all three of them to live along with Defendant 1's children. Defendant 1 took the pictures of MF that were used in the Backpage.com advertisements. Defendant 1 also posted the advertisements using her own telephone number, (619) 581-0909. Defendant 1 would typically receive the calls and schedule the prostitution

4

date for MF and then advise MF as to when the client would arrive. Occasionally, Defendant 1 would allow MF to have the phone. MF had to give all the money made by prostitution to Defendant 1. Defendant 2 would rent the hotel rooms where the prostitution would occur. MF believed that Defendant 1 would give Defendant 2 proceeds of the prostitution. MF commented that while Defendant1 would tell her that the money was to make their lives better and give her a stable place to live, Defendant 1 never saved any of the money and never attempted to obtain permanent living arrangements for them. MF stated that both Defendant 1 and Defendant 2 knew she was a minor as Defendant 1 was her sister-in-law and Defendant 2 had known MF since she was approximately eight years old. Additionally, MF was present when Defendant 1 reminded Defendant 2 that MF was a minor.

_____
CARLA CROFT
Special Agent, FBI